UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :    08 Cr. 798 (DLC)

              -v.-          :

FRANKIE PEREZ,                    :
  a/k/a "Bxloveboy22@aol.com,"
  a/k/a "Perez2250X@aol.com,"      :

              Defendant.     :

- - - - - - - - - - - - - - - - - - x

**GOVERNMENT'S SENTENCING MEMORANDUM**

LEV L. DASSIN
Acting United States Attorney for the
Southern District of New York
Attorney for the United States
of America.

HOWARD S. MASTER
Assistant United States Attorney
    - Of Counsel -



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*

*One Saint Andrew's Plaza*
*New York, New York 10007*

March 27, 2009

The Honorable Denise L. Cote
United States District Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

        Re:    ***United States v. Frankie Perez*,**
                **No. 08 Cr. 798 (DLC)**

Dear Judge Cote:

        The defendant in this matter, Frankie Perez, a/k/a "Bxloveboy22@aol.com," a/k/a "Perez2250X@aol.com," is scheduled to be sentenced by the Court on April 3, 2009 at 10:00 a.m. , for using a facility of interstate commerce to persuade, induce, entice, and coerce a child to engage in sexual activity, in violation of Title 18, United States Code, Section 2422(b). The Government submits this sentencing memorandum to request that the Court impose a sentence of 135 months' imprisonment, the top of the applicable United States Sentencing Guidelines range, and a lifetime sentence of supervised release.[1] For the reasons set forth below, this sentence is warranted in view of the egregious nature of the defendant's crime, the history and characteristics of the defendant, which suggest that he is at high risk of reoffending, and the need to protect the public from the defendant, both during and after the completion of his term of incarceration.

## BACKGROUND

### A.      The Offense

        On December 22, 2008, the defendant appeared before the Honorable Henry Pitman, United States Magistrate Judge, a one count indictment, No. 08 Cr. 798 (the "Indictment"). The

---

       [1] The Government's submission was due on March 27, 2009, but due to unanticipated delays, it is being electronically filed shortly after midnight on March 28, 2009. The Government requests leave to file the submission out of time.

The Honorable Denise L. Cote
March 27, 2009
Page 2 of 9

Indictment charges that from at least 2005, up to and including March 2008, in the Southern District of New York and elsewhere, the defendant used a computer and the Internet to entice, induce, coerce, and persuade a minor to engage in sexual activity in violation of New York State law. (Presentence Investigation Report ("PSR") ¶ 2). The Court accepted the defendant's guilty plea on February 3, 2009.

As set forth in the PSR, the defendant's crime of conviction arises out of his repeated sexual abuse of a child ("Child-1") over a period of years, and his use of the Internet to facilitate that abuse. The defendant volunteered at New York City Public School 89 in the Bronx, where Child-1 was a student at the time Child-1 met Perez. (PSR ¶¶ 15, 52). When Child-1 was approximately 12 years old, Perez approached Child-1 and offered to help Child-1 with schoolwork at Perez's residence. In the fall of 2005, when Child-1 was 13 years old, Perez began communicating with Child-1 using the AOL instant messaging service, and Child-1 began to visit Perez's apartment following Perez's repeated invitations to do so. (PSR ¶ 15). Eventually, Perez began soliciting Child-1 to engage in sexual conduct while at Perez's apartment, and he was ultimately able to induce Child-1 to engage in sexual conduct with him. This sexual conduct occurred on multiple occasions between 2006 and March of 2008, when Child-1 was between 13 and 15 years old. On at least one of these occasions, Perez got Child-1 drunk and then engaged in sexual activity with Child-1. (PSR ¶ 15, 20).

Perez used his computer and the Internet to facilitate his sexual exploitation of Child-1. As Child-1, now 16 years old, recounts in a victim statement that is attached to this sentencing memorandum as Exhibit A,[2] Perez relentlessly pursued Child-1 using instant messaging services, and he utilized those services as part of a concerted effort to induce Child-1 to come to Perez's apartment, and to engage in sexual conduct with Child-1.

> [Perez] constantly wrote to me even if I blocked this person.[3] I felt like he was stalking me. . . . Constantly I'll get IMs from this person, IMs like let's meet up to hang out and chill, so since I was young and dumb I would meet up with this person. Sometimes he would write me in the daytime for me to come to his house because he has told me before if I need help with my homework that he is always there to help.

Eventually, Perez was able to induce Child-1 to engage in sexual conduct with him; Child-1 describes in his statement that he was "forced" by Perez to engage in this sexual conduct--that

---

[2] Child-1's spelling and grammar have been corrected for ease of reading.

[3] An AOL user can "block" another AOL user from sending unwanted messages. *See* http://www.aim.com/help_faq/security/faq.adp.

The Honorable Denise L. Cote
March 27, 2009
Page 3 of 9

even though Child-1 "to[ld] him no, and no is no," he succumbed to Perez's advances because Child-1 was "young, I didn't know, I was scared." (Ex. A, PSR ¶ 20).

Perez used Internet technology to maintain contact with Victim-1 and continue to induce Victim-1 to engage in illegal sexual conduct. During the course of the investigation, the Government obtained records of sexually-explicit AOL instant messaging chats from a computer that Perez used to communicate with Child-1 in the spring of 2008. In these chats, which are described in greater detail in the PSR (PSR ¶ 14),[4] Perez offered to buy Child-1 a bottle of liquor if Child-1 would engage in oral and anal sex with Perez. Perez also made plans to meet Child-1 for sexual intercourse on these captured communications. Perez brazenly engaged in these communications, and in the continued sexual exploitation of Child-1, even after he had been informed by the FBI that he was under investigation for using the email account "Perez2250X@aol.com" to engage in sexually explicit communications with someone whom he believed to be a minor. (PSR ¶¶ 6-8).

Perez also used the Internet to obtain information that would assist him in sexually exploiting Child-1. For example, FBI agents found on a New York City public schools computer used by Perez record of a Google search for information on how to "get a boy to suck your dick." (PSR ¶ 11). Perez admitted that he conducted this search because he wanted to get Child-1 to suck his penis. (PSR ¶ 13).

The defendant's crime had a devastating effect on Child-1 and his family. Child-1 reports that he feels "molested and disgusted" by what Perez did to him, and he remains "embarrassed" by the conduct Perez forced him to engage in. (Ex. A). Child-1's father has informed the Government that he believes that the crime adversely affected Child-1's social interactions and studies. During the period of time that Perez was sexually abusing Child-1, Child-1's father observed Child-1 draw inward and become afraid of going to school. Child-1's father believes that Perez's criminal conduct, facilitated in part through Perez's access to Child-1's school, contributed to educational problems experienced by Child-1.

Child-1's father also reports that he is devastated by the defendant's crime. Child-1's father is a Sergeant in the United States Army Reserves who was called to active duty in 2004, and who served two tours of duty in Iraq. His first tour of duty occurred between 2004 and 2005, during the period when the defendant was beginning to "groom" Child-1 to engage in sexual conduct with him. After being injured in Iraq, Child-1's father returned home for less than a year before he volunteered to serve another tour of duty in the Mosul area of Iraq in 2006 and 2007. This tour of duty was cut short when Child-1's father sustained a brain injury, and other related injuries, as a result of a rocket blast. Child-1's father has also been diagnosed with post-

---

[4] It appears that the computer used by Perez to engage in these chats had only recently been purchased. (PSR ¶¶ 8, 12, 13(a)). Accordingly, earlier AOL instant messaging communications between Perez and Child-1 would not have been stored on the computer.

The Honorable Denise L. Cote
March 27, 2009
Page 4 of 9

traumatic stress disorder ("PTSD") as a result of his two tours of duty.  It appears that Perez
began engaging in sexual conduct with Child-1 either shortly before or during Child-1's father's
second tour of duty in Iraq.  Child-1's father reports that he feels guilty and upset that Perez
harmed his son while he was away from his family serving his country.[5]

### B.    Other Facts Relevant to Sentencing

Other evidence indicates that the defendant has sought other underage victims to sexually
abuse, and that he has in fact succeeded in those efforts on at least one occasion.  Moreover,
Perez's statements and other conduct suggest that he has a deep-seated sexual attraction to
underage boys.  These facts are relevant to the "history and characteristics of the defendant," 18
U.S.C. § 3553(a)(1), and also to the need for the sentence imposed "to protect the public from
further crimes of the defendant," *id.* § 3553(a)(2)(C).

As had previously been indicated to the Court, following the defendant's entry of a guilty
plea to the charged offense, another child ("Child-2") came forward to inform law enforcement
that Perez had molested him.  Specifically, Child-2 informed law enforcement officers that, in or
about June 2007, when Child-2 was 8 years old, Perez brought Child-2 into Perez's bedroom.
Perez then placed Child-2's hand on Perez's penis.  Perez also reached into Child-2's underpants
and placed his hand on Child-2's penis.  Perez had been hired to babysit Child-2 by Child-2's
mother at the time Perez molested Child-2.[6]  The Government is prepared to prove through
competent evidence at a *Fatico* hearing that the defendant committed this additional offense,
should the defendant dispute that he committed the offense, and should the Court determine that
the facts and circumstances of this additional offense are relevant to its sentencing determination.

In addition to the molestation offense described above, FBI investigators obtained
evidence that Perez sought sexual contact with children, or to pursue his sexual attraction to
children, on several other occasions.  First, as set forth in the PSR, FBI agents were led to Perez

---

[5] Child-1's father had expressed his intent to speak at sentencing, but today, he informed
the Government that he may find the experience of appearing in Court in the presence of the
defendant too upsetting and overwhelming, particularly in view of his PTSD.  Accordingly, he is
attempting to draft a letter to the Court in lieu of personally appearing before the Court.  The
Government will forward the letter to the Court and defense counsel as soon as the letter is
available, in the event that Child-1's father is able to complete the letter.  Should Child-1's
father decide that he in fact does wish to speak at sentencing, the Government will immediately
inform the Court and defense counsel.

[6] The Government has been informed by the Bronx District Attorney's Office that it is
prepared to charge Perez in connection with this newly-discovered offense, pending the results of
the instant proceeding, although a criminal complaint has not yet been filed against Perez.

The Honorable Denise L. Cote
March 27, 2009
Page 5 of 9

initially by sexually-explicit chats that Perez engaged in with an individual whom Perez believed to be a 13 or 14-year-old boy.  (PSR ¶¶ 6, 13(c)).  During these sexually-explicit chats, Perez offered to make arrangements to pick up the individual whom he believed to be an underage boy at Pennsylvania Station in New York, and to have sex with the boy.  Perez admitted engaging in similar chats with other individuals on other occasions.  (*Id.*).

Second, Perez obtained access to New York City public schools as a parent volunteer in order to pursue his sexual attraction to underage boys.  Perez admitted to FBI agents at a *Mirandized*, noncustodial interview on June 30, 2008, that "the real reason he liked volunteering in the schools was to be around the young boys."  (*See* PSR ¶¶ 13(d), 52).[7]  Third, child pornography was found on a New York City public schools laptop used by Perez, and Perez admitted that he knowingly viewed child pornography on the laptop, even though he was aware that child pornography was illegal.  (PSR ¶¶ 11, 13(e)).

### C.	The Defendant's Criminal History and Applicable Guidelines Range

As set forth in the PSR, the defendant is in Criminal History Category I, and his total adjusted offense level is 31.  (PSR ¶¶ 31, 39).  Based on these factors, and the 10-year mandatory minimum sentence applicable to the defendant's crime, the applicable Guidelines range for the defendant is 120 to 135 months' imprisonment.  The parties agreed not to seek a sentence outside of this Guideline range.  The defendant is also subject to a 5-year mandatory minimum term of supervised release, and a maximum of lifetime supervised release, as a result of his conviction.

## APPLICABLE LAW

### A.	Application Of The Guidelines

The United States Sentencing Guidelines (the "Guidelines") still provide strong guidance to the Court in light of *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Crosby*,

---

[7]  Perez alleges, through defense counsel, that at all times while Perez volunteered at the schools, his ex-fiancees' sons were at the schools, and that Perez volunteered at the schools to become more active in his ex-fiancee's sons' education and school activities.  (PSR ¶ 52).  This assertion is not accurate.  FBI agents learned that Perez's ex-fiancee's sons were not students at Public School 121, which is one of the schools at which Perez volunteered in his capacity as a leader of the Community District 11 parents' association.   In any event, it is immaterial whether desire to participate in his ex-fiancees' sons' education was *one of* the reasons why Perez volunteered at the schools; what is clear is that sexual attraction to underage boys was a key reason why Perez sought to gain access to the public schools as a parent volunteer and parents' association officer.

The Honorable Denise L. Cote
March 27, 2009
Page 6 of 9

397 F.3d 103 (2d Cir. 2005).  Although *Booker* held that the Guidelines are no longer mandatory, it held also that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing.  543 U.S. at 264.  As the Supreme Court recently stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark" for sentencing determinations.  *Gall* v. *United States*, 128 S. Ct. 586, 596 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant" (§ 3553(a)(1)); the four legitimate purposes of sentencing (§ 3553(a)(2)); "the kinds of sentences available" (§ 3553(a)(3)); the Guidelines range itself (§ 3553(a)(4)); any relevant policy statement by the Sentencing Commission (§ 3553(a)(5)); "the need to avoid unwarranted sentence disparities among defendants" (§ 3553(a)(6)); and "the need to provide restitution to any victims" (§ 3553(a)(7)).  *See Gall*, 128 S. Ct. at 596-97 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)    to afford adequate deterrence to criminal conduct;

    (C)    to protect the public from further crimes of the defendant; and

    (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process."  *Gall*, 128 S. Ct. at 596 n.6.  Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita v. United States*, 127 S. Ct. 2456, 2463 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 128 S. Ct. at 594; *see also Rita*, 127 S. Ct. at 2464.  To the extent a sentencing court varies from the

The Honorable Denise L. Cote
March 27, 2009
Page 7 of 9

Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 128 S. Ct. at 597.

**B.    The Appropriate Sentence**

In this case, a sentence of 135 months' imprisonment, the top of the applicable Guideline range, and a lifetime term of supervised release, are necessary to reflect the egregious nature and circumstances of the offense, to reflect the dangerous history and characteristics of the defendant, and to achieve the objectives of sentencing set forth in 18 U.S.C. § 3553(a)(2). As set forth above and in the PSR, the defendant took advantage of his access to the New York City public schools, and his superior age and knowledge, to develop a relationship with Child-1 by offering to tutor Child-1. Perez engaged in a concerted effort over months and years, using Internet communications and in-person meetings, to "groom" Child-1, and to induce Child-1 to engage in sexual activity with him. He did so in large part while Child-1's father was abroad serving his country in Iraq, and thus unable to be present for Child-1, or to protect Child-1 from Perez. Perez's efforts were relentless, calculated, and cunning, and his crime devastated Child-1 and his family. Accordingly, a sentence at the top of the applicable Guidelines ranges is necessary to reflect the "nature and circumstances of the offense," *id.* § 3553(a)(1), as well as "to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense" that the defendant committed against Child-1. *Id.* § 3553(a)(2)(A).

A sentence within the applicable Guidelines range is also necessary to "afford adequate deterrence to criminal conduct," *id.* § 3553(a)(2)(B), both generally and specific to the defendant. A 135-month sentence of incarceration would indicate to the defendant and others who are similarly situated that there are very serious consequences to sexual abuse of minors, particularly sexual abuse of the duration, nature and type committed by Perez. In addition, a significant sentence is necessary to deter the defendant from acting on his desires to engage in sexual conduct with children in the future.

A sentence at the top of the applicable Guidelines range, and a lifetime sentence of supervised release, are necessary to "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). Here, the record indicates that the defendant is at high risk of reoffending due to his admitted sexual attraction to young boys, and his willingness to act on that attraction even while subject to law enforcement scrutiny; as set forth above, Perez continued to induce Child-1 to engage in sexual conduct with him even while Perez was aware of the FBI investigation that ultimately led to his arrest. Accordingly, a custodial sentence at the top of the applicable Guidelines range will increase the period of time that the defendant will be incapacitated, and thus unable to engage in future crimes against children.

The Honorable Denise L. Cote
March 27, 2009
Page 8 of 9

Moreover, a lifetime sentence of supervised release is necessary to protect the public from the defendant's future crimes. If the defendant receives a within-Guidelines custodial sentence, he will only be in his late 30s or early 40s upon his release. If Perez receives the statutory minimum 5-year term of supervised release, he will be off supervision by his mid-40s, when he is still at an age at which he may have the desire and means to reoffend. Monitoring of the defendant's computer usage and other intensive supervision for far longer than the 5-year minimum provided for by statute is thus necessary to protect the public from this defendant upon his release. Similarly, the "history and characteristics of the defendant," *id.* § 3553(a)(1), indicate that the defendant represents a significant danger to the community, and that he requires a lifetime term of supervised release to protect the community from him, and to help ensure that he does not reoffend upon his release from incarceration. The Sentencing Commission's policy statements, which must be considered by the Court in aid of sentencing, *id.* § 3553(a)(5), also indicate that the defendant should be subject to a lifetime term of supervised release. U.S.S.G. § 5D1.2(b) recommends that "[i]f the instant offense of conviction is a sex offense, . . . the statutory maximum term of supervised release"—here, a lifetime term of supervised release—"is recommended."

The defendant cites a difficult upbringing, including his own childhood sexual abuse, as a factor weighing in favor of a sentence at the bottom of the applicable Guidelines range. But while the defendant's difficult upbringing may be cause for sympathy, it does not excuse the defendant's criminal conduct, nor does it obviate the need to protect the public from the defendant in the future. Similarly, while the defendant's expressions of remorse and his asserted openness to treatment are welcome, his assurances that his criminal impulses are subject to treatment cannot be taken at face value in view of the extensive evidence that the defendant has a deep-seated sexual attraction to underage boys, and a willingness to act on that attraction when given the means and opportunity to do so.

The Honorable Denise L. Cote
March 27, 2009
Page 9 of 9

## <u>CONCLUSION</u>

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence on the defendant of 135 months' imprisonment, and a lifetime term of supervised release, as this sentence is sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

LEV L. DASSIN
Acting United States Attorney
Southern District of New York

By:    s/ Howard S. Master              
Howard S. Master
Assistant United States Attorney
212-637-2248

cc:    Jennifer Brown, Esq., Attorney for Defendant